R. M. PEADRO

v.

DORA CARRIKER *et al.*

*Opinion filed November 1, 1897.*

1. LIMITATIONS—*section 6 of Limitation act construed—purchase need not be evidenced by deed.* Under section 6 of the Limitation act, (Rev. Stat. 1874, p. 674,) which provides that rights acquired by one in possession of improved lands under claim and color of title shall inure to the benefit of his purchasers, etc., the purchase need not be evidenced by deed to entitle the vendee to the benefits of the provisions of the section.

2. SAME—*payment of taxes under section 6 need not be by holder of color of title.* Seven successive years' payment of taxes, begun under section 6 of the Limitation act by one in possession of improved lands under claim and color of title, may be completed by his vendee holding possession under a bond for a deed.

3. SAME—*under section 7 payment of taxes must be by holder of color of title.* Under section 7 of the Limitation act (Rev. Stat. 1874, p. 674,) the payment of taxes for seven successive years upon vacant property must be made by the person holding the color of title at the time of payment.

APPEAL from the Circuit Court of Moultrie county; the Hon. EDWARD P. VAIL, Judge, presiding.

This is a petition for partition, filed on July 17, 1894, by the appellant, Robert M. Peadro, who is also one of the attorneys for himself in this case. The property sought to be divided is described as lots 1 and 2 and twenty feet off of the east side of lot 3 in block 14 in the original town, now city, of Sullivan, in Moultrie county, Illinois. The petition alleges, that appellant owns one-tenth, and that the defendant below, Ruth Phelps, owns the other nine-tenths of said lots, subject to the life estate of one Maria Preston, formerly Maria Seany; and that said life estate is owned by the appellee, Dora Carriker, and the other children of Rachel Hancock, deceased.

Defendants below, appellees here, Bush Hancock, Emmet Hancock and Otis Hancock, children of Rachel Han-

cock, deceased, filed a plea, stating that, if any cause of action existed against them, the same arose more than seven years before the petition or bill of complaint was filed. The three last named defendants also filed an answer, denying that the appellant and Ruth Phelps had any interest in said premises, and averring that the respondents were the exclusive owners of said lot 2 and twenty feet off of the east side of said lot 3; and that said lot 1 belonged to said three respondents and their sisters, Delia Ashbrook and Addie Riggin. The answer further states, that, for more than seven years prior to the beginning of this suit, respondents, and their mother, Rachel Hancock, deceased, and her grantors, had peaceable possession of said premises, under claim and color of title made in good faith, and have continued in such possession up to the present time, and, during all of that time, have paid all taxes, legally assessed against said lots; and the respondents set up, as a bar to the suit, section 6 of the Limitation act, being chapter 83 of the Revised Statutes of Illinois.

The said Otis, Emmet and Bush Hancock, the latter being a minor and suing by his next friend, also filed a cross-bill, representing that they were the owners in fee simple of said lot 2 and twenty feet off of the east side of said lot 3 in equal parts, and that they derived title thereto by purchase from J. Meeker and William Kirkwood, trustees under a decree of the circuit court of said county rendered at the November term, 1876, in a cause, wherein Mary Elder and others were complainants, and William Elder and others were defendants, and under another decree between the same parties in the same court, rendered at the November term, 1890, wherein the said Kirkwood was appointed trustee. The cross-bill also averred, that, on June 6, 1891, Rachel Hancock died seized in fee of said lot 1, leaving her surviving the following children as her legal heirs, to-wit: Otis, Emmet, Bush and William Hancock, Dora Carriker, Josie Myers, Delia

Ashbrook and Addie Riggin, each inheriting from their said mother one-eighth of said premises; and that William Hancock, Dora Carriker and her husband, and Josie Myers and her husband, had conveyed their interests in the said lot 1 to the complainants in the cross-bill, Otis, Emmet and Bush Hancock; that said complainants were each the owners of an undivided two-eighths of said lot 1, deriving title, each to one-eighth part, by inheritance from their said mother, and each to another one-eighth part by purchase as aforesaid; that said Delia Ashbrook and Addie Riggin were the owners, each in fee of an undivided one-eighth part of said lot 1, deriving their title by inheritance from their said mother. The prayer of the cross-bill is for partition according to the interests thus set up therein. R. M. Peadro and Ruth Phelps filed an answer to said cross-bill, denying the title of the complainants in the cross-bill, and of Delia Ashbrook and Addie Riggin, as therein set up, and claiming themselves to be the owners in fee of said premises according to the allegations of their original bill.

The case was referred to a master in chancery, who made report, finding the equities with the complainants in the original bill; that Otis, Emmet and Bush Hancock were the owners as tenants in common of the life estate of said Maria Preston in said lot 2 and twenty feet off of the east side of said lot 3, and that said Otis, Emmet and Bush Hancock and Delia Ashbrook and Addie Riggin were the owners as tenants in common of said life estate in said lot 1, the three first of an undivided six-eighths thereof and the two last of an undivided one-eighth thereof; and also finding, that the allegations of the cross-bill were not sustained by the evidence, and recommending the dismissal of the said cross-bill. Objections were filed before the master to his report, which were overruled by him. The same objections were re-filed as exceptions to the report in the circuit court. The circuit court sustained the exceptions to the report of the master, and found that the

ownership of the premises was as alleged in the cross-bill, that is to say, that Otis, Emmet and Bush Hancock were the owners each of an undivided third part of lot 2 and twenty feet off of the east side of lot 3, and also that they were the owners each of the undivided two-eighths of said lot 1, and that said Delia Ashbrook and Addie Riggin were the owners each of an undivided one-eighth part of said lot 1.   The decree ordered a partition of the premises in accordance with the prayer of the cross-bill.

The material facts showing the titles respectively claimed by the parties are as follows: On October 15, 1878, William Seany and Joseph Seany, sons of one Owen Seany, deceased, were the owners of all of said premises above described, subject to the life estate therein of their mother, Maria Preston, to whom her dower interest in the said premises, as widow of her said husband, Owen Seany, had theretofore been set off by commissioners under the statute.   On October 15, 1878, William Seany and his wife and Joseph Seany and his wife executed a deed of said premises to Eliza Short, the wife of William A. Short, who on the same day executed back to Joseph Seany a mortgage to secure three notes of $193.86 each upon the said premises and other property, which notes were also dated October 15, 1878.   At the April term, 1877, of said circuit court one William S. Harris, guardian of William Grant Camfield, for the use of William Kirkwood obtained a judgment against William L. Seany.   Upon this judgment an execution was issued, and a return made of "no property found."   Subsequently an affidavit was filed under the statute, alleging that the said William A. and Eliza Short were indebted to William Seany, the judgment debtor, and praying for garnishment process against the Shorts.   Thereafter at the April term, 1879, a garnishee judgment was entered in favor of William Seany for the use of Harris for the use of Kirkwood against the Shorts for $154.50.   This judgment was rendered on May 1. 1879.   Execution was issued thereon on May 14, 1879,

and on that day levied by the sheriff upon said lots 1 and
2 and twenty feet off of the east side of said lot 3, and
also upon the north-east quarter of a certain block 5 in
Sullivan, and also upon forty acres of land in said county,
all being the property of the said William A. and Eliza
Short.   On July 5, 1879, the sheriff sold the property so
levied upon, and the same was purchased at said sale by
William Kirkwood, who bid $25 for the north-east quar-
ter of block 5, $31 for the premises here in controversy,
and $125 for said forty acres.   No money was actually
paid by Kirkwood, the purchaser, but the bids were cred-
ited upon, and operated to discharge, the judgment.   The
judgment was really owned by the minor, William Grant
Camfield.   Kirkwood had up to this time been the guar-
dian of William Grant Camfield, having succeeded said
Harris in such guardianship.   Kirkwood bid the prop-
erty off for his ward, Camfield.   About that time one J. H.
Baker had been appointed guardian of William Grant
Camfield, as the successor of Kirkwood.   Kirkwood as-
signed the certificate of sale, which was issued to him
by the sheriff, to Baker to be held for the benefit of said
ward.   Baker, however, assigned said certificate of sale
to one E. E. Fleming on September 24, 1880.   On October
30, 1880, the sheriff issued his deed to E. E. Fleming.   The
record shows, that Fleming held the title for Baker for
about five years, and on April 21, 1885, Fleming and his
wife deeded the premises to Baker.   On the same day
Baker deeded the premises to a brother-in-law of his,
named A. E. D. Scott, but did not record the deed, which
he made to Scott, until August 25, 1885.   On the same
day, August 25, 1885, Scott and wife deeded the premises
back to Baker, but this deed was not recorded until July
6, 1886. On June 2, 1894, Baker and his wife deeded nine-
tenths of these premises to Ruth Phelps, his sister-in-
law, and on June 11, 1894, he deeded one-tenth of the
same to R. M. Peadro, the appellant in this case.   The
two latter deeds were recorded on July 16, 1894, the day

before the present petition, or bill for partition, was filed. The title claimed by appellant and Ruth Phelps is thus deraigned from the sheriff's sale under the judgment against William A. and Eliza Short.

The title of appellees herein, the children of Mrs. Hancock, is also deraigned from the Shorts in manner following, to-wit: One William Elder had been qualified as executor of the will of one James Elder, deceased, and as such was trustee of certain funds, belonging to the heirs and devisees of said James Elder, deceased. William Elder, as such trustee, had the power to invest the funds of the said estate. It would appear from the proceedings in the record, that he invested some of the trust funds in his hands in the mortgage and notes, which had been executed by the Shorts to Joseph Seany, and that the deeds hereinafter mentioned from Maria Preston and from the Shorts to himself, conveying the premises here in controversy, were taken in payment of said mortgage. On July 9, 1880, Maria Preston and her husband conveyed to said William Elder said lots 1 and 2 and twenty feet off of the east side of said lot 3. This deed vested in Elder the life estate of Mrs. Preston. Subsequently, on February 1, 1882, Eliza Short and her husband executed a deed to William Elder, conveying the said premises and other property.

J. Meeker and W. P. Corbin had been sureties upon the bond of said William Elder, as executor of said estate, and said Elder had conveyed and transferred to them certain real estate and judgment notes, in which he had invested said trust funds. At the November term, 1886, of said circuit court, a decree was entered, finding, that William Elder was insolvent, and had mismanaged the estate, and removing him from his position as trustee, and appointing J. J. Meeker, as trustee in his place. Among the pieces of real estate, which had been transferred to Meeker and Corbin by Elder, were the lots here in controversy. By the decree so entered, Meeker was given power

to manage and rent said real estate, and to sell the same either at public or private sale. The decree also directed, that Corbin convey all his interest in said premises to Meeker, as trustee, and that Elder turn over to said trustee all the notes and mortgages in his possession, belonging to the trust estate. On January 1, 1888, Meeker, as trustee, holding the title to said lots, made sale of the same to Rachel Hancock for $700, and executed to her a bond or contract for a deed, $100 of the purchase money being paid in cash, and for the balance Mrs. Hancock executed two notes, one for $100 payable in one year, and the other for $500 payable in three years. This sale was reported by Meeker to the court. Bond was executed by Meeker for the performance of his duties, as trustee, in the sum of $30,000.

Subsequently, at the November term, 1889, of said circuit court, and on the 27th day of November, Meeker resigned his position, as trustee of said estate, and, on that day, the said Baker above named was appointed trustee in the place of Meeker, and afterward executed a bond for the performance of his duties, as such trustee, in the sum of $30,000. The decree, appointing Baker, provided for his performance of the same duties, and vested him with the same powers, which were given to J. Meeker under the former decree, so far as the management and control of the said trust property were concerned. He was thereby authorized to lend money, belonging to the estate, and to collect money, belonging to the estate. Meeker was also directed by said decree to convey all the real estate, remaining in his hands and undisposed of by him, as such trustee, to the said Baker, subject, however, to all contracts theretofore made by him as such trustee relative to such real estate. It was also provided in said decree, that Baker should as such trustee execute and perform all the contracts, made by Meeker relative to the sale of the real estate belonging to the trust estate.

It should have been stated that on August 5, 1886, William Elder and his wife executed a deed, conveying said lots and other property to J. Meeker and W. P. Corbin; and that, after the appointment of Meeker as trustee in the place of William Elder, W. P. Corbin on December 11, 1886, executed a deed of these lots and other property to J. Meeker. After the appointment of J. H. Baker, as the successor of J. Meeker, Meeker and his wife on March 27, 1890, executed a deed to Baker, conveying these lots and other premises to Baker, subject to the terms and conditions of any contract theretofore made by Meeker, as trustee, with any other party for the sale of any of said lots, or any portion thereof. Subsequently, at the November term, 1890, of said circuit court, J. H. Baker resigned his trusteeship of the said Elder estate, and the said William Kirkwood was appointed as his successor, and Baker was ordered to transfer and convey all of said trust property to said Kirkwood, as trustee. Thereafter, on November 27, 1890, Baker, as trustee, executed a deed to Kirkwood, conveying to the latter, as trustee, the lots here in controversy and other property, subject to the terms and conditions of any contract theretofore made by said Baker, as trustee, or his predecessor, as trustee, with any other person for the sale of said land, or any portion thereof. On March 14, 1891, said Kirkwood, as trustee, executed to said Rachel Hancock a deed of said lot 1 in pursuance of the contract, made with her by Meeker, as trustee, and in part fulfillment of that contract. On the same day Kirkwood, as trustee, executed to Otis Hancock, Emmet Hancock, and Bush Hancock, a deed, conveying to them said lot 2 and twenty feet off of the east side of said lot 3, which deed recited, that all the purchase money for said premises had been paid by said Rachel Hancock, and that she had sold said lot 2 and twenty feet off of the east side of said lot 3 to her said sons Otis, Emmet and Bush Hancock, and had re-

quested the trustee, Kirkwood, to convey the last named premises to her said sons, instead of to herself. The record shows, that, upon the margin of the record where the mortgage given by W. A. and Eliza Short to Joseph Seany was recorded, a memorandum was made, stating that the mortgage had been satisfied in full, which memorandum was signed by William Elder, as assignee of the notes secured by said mortgage, and seems to bear date November 22, 1887, although in one place in the record the date is given as November 22, 1881.

R. M. PEADRO, and J. J. PEADRO, for appellant.

W. G. COCHRAN, and MEEKER & MEEKER, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Counsel for appellees charge, that J. H. Baker bought these premises at the sheriff's sale for himself, instead of buying them for his ward as it was his duty to do. The proof clearly shows, that Fleming, to whom the sheriff's deed was made, had no interest whatever in the premises and paid no money for them, but that he held the title for Baker. The conveyance of the property to Fleming, and the subsequent conveyance of it to Scott, Baker's brother-in-law, and the conveyance from Scott back to Baker, and Baker's testimony in the case, and all the circumstances, surrounding the transaction, go to show, that Baker's intention originally was to defraud his ward and secure the property for himself. He paid nothing for the property, and yet he sold that portion of it bought at the sheriff's sale, which is not involved in this suit, to third parties for about $1000. But this is a matter of which Camfield, the ward, alone had the right to complain. We find, that, on January 26, 1886, while the title to the property stood of record in Scott, Baker obtained a deed from his ward, William Grant Camfield, who had

become of age at this time, and this deed recites, that Camfield relinquishes and discharges Baker, as former guardian, from all liability to him in every way, shape or form, that does or may in any way exist against him, as such guardian or otherwise. As the ward, the only party entitled to complain of the fraud, has thus executed to his guardian a full discharge and release of all claims against him for any violation of duty, we cannot see, that the appellees are entitled to set up such violation of duty in this proceeding to invalidate such title, as Baker may have obtained through said sheriff's sale.

It also appears, that Baker permitted himself in November, 1889, and March, 1890, to be appointed trustee of the estate of James Elder, deceased; and that, as such trustee, he received a conveyance from his predecessor, Meeker, of these very lots. By such conveyance the adverse title, derived by William Elder through the deed from the Shorts, was conveyed to him, as trustee, at the very time when he was either the legal or equitable owner of the title, derived through the sheriff's sale. He accepted the deed from Meeker subject to the contract, which Meeker had made for the sale of this very property to Mrs. Rachel Hancock, the mother of the present appellees. When, after his resignation as trustee, he conveyed this property to his successor in trust, Kirkwood, he certainly conveyed the title, obtained by William Elder from the Shorts, and also the title to the life estate, obtained by William Elder from Mrs. Preston. It would appear that a man, who thus acted as trustee for the Elder estate, holding the title adverse to that acquired under the sheriff's sale, should be estopped from setting up any claim against Mrs. Hancock, the purchaser from his predecessor in the trust. Certainly, when Baker made his deed to his successor, Kirkwood, the record showed, that he was himself the holder of the legal title, obtained through the sheriff's sale. It appears, however, that, just before he was appointed trustee of the Elder estate,

to-wit: on November 11, 1889, he and his wife conveyed these lots to Lou E. Phelps, his sister-in-law, which deed was not recorded until August 30, 1890. It is quite apparent, that there was no consideration for this deed to Lou E. Phelps, who conveyed the premises back to Baker on December 7, 1891. But when Baker as trustee deeded these premises to Kirkwood, as trustee, the legal title to the lots, as derived through the sheriff's sale, was held by his sister-in-law, Miss Phelps, to whom he afterwards on June 2, 1894, deeded nine-tenths of said lots, evidently for the purpose of bringing this partition suit. The title and the records were so managed and manipulated, that, while Baker held the title derived from the Shorts as trustee of the Elder estate, his sister-in-law held for him the legal title derived through the sheriff's sale, although the equitable title thereto was undoubtedly in him, and until August 30, 1890, the records did not show that the legal title was not in him. While all these matters show a degree of trickery and unscrupulousness, which deserves the severest condemnation, yet we do not feel satisfied, that they furnish any sufficient ground for a court of equity to relieve the appellees. Without passing any opinion upon the effect of this conduct of Baker, except to express our astonishment, that a man, who belongs to a learned and honorable profession, should be guilty of such conduct, we pass to a consideration of the remaining ground of defense set up by the appellees here, the defendants below, in their answer.

The defendants below, who are the appellees here, invoke section 6 of the Statute of Limitations, as a defense, and claim that, before the present suit was commenced, they had been in possession of the premises for seven years, under claim and color of title made in good faith, and, during all that time, paid all the taxes legally assessed upon the premises. We are of the opinion, that the evidence sustains the defense thus made. The deed, executed on February 1, 1882, by Eliza E. Short and her

husband to William Elder, conveying these premises, was good color of title. While William Elder held the title, he paid the taxes for the years 1882, 1883, 1884 and 1885. In 1886 William Elder and Corbin conveyed the premises to J. Meeker. While Meeker held the title, he paid the taxes for the years 1886 and 1887. Meeker sold the premises to Rachel Hancock on March 1, 1888. Mrs. Hancock paid the taxes for 1888 and 1889. It thus appears that the taxes were paid for eight successive years, certainly for seven successive years, by Elder, Meeker and Rachel Hancock. The proof also shows that, from 1882 down to the death of Mrs. Hancock in the spring of 1891, Elder, Meeker and Mrs. Hancock were in possession of these premises. There were a dwelling house and one or more outhouses upon the lots. From 1882 up to the time of Mrs. Hancock's purchase this dwelling house was occupied by tenants, holding under Elder and Meeker, and after her purchase she took possession herself.

It is said by appellant, that a title under the Limitation law cannot be acquired by the appellees, or their grantors, to the remainder in these premises, while the life estate was outstanding in Mrs. Preston. We do not think, that the fact of the existence of the life estate cuts any figure in this case, for the reason that, before William Elder obtained his deed from Eliza Short and her husband in February, 1882, he had previously thereto, to-wit: on July 9, 1880, obtained a deed from Maria Preston and her husband, conveying to him Mrs. Preston's life estate. By these two deeds the life estate had become merged in the fee, so that, when the deed was executed to Elder in February, 1882, he was the owner of the whole title, both life estate and remainder.

It is moreover claimed that, when Mrs. Hancock paid the taxes for 1888 and 1889, she did not have a deed from Meeker, but had only a bond or contract for a deed, and that, under the decisions of this court, an executory contract for a conveyance of title cannot be regarded as

color of title. This position would have much force, if the color of title here insisted upon were merely the contract for a deed, executed by Meeker to Mrs. Hancock. But the color of title in this case is not such contract, but is the deed executed by the Shorts to Elder on February 1, 1882. If Elder, the grantor, under whom Mrs. Hancock held before the period of seven years was complete, had had nothing but a contract for a deed, the contention of the appellant would be sound. It appears, however, that Mrs. Hancock's grantors, who sold to her before the period of seven years was complete, held under claim and color of title which was valid, and, therefore, inured to her benefit. This is apparent from the language of section 6 of the Limitation law, which provides as follows: "All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section." (2 Starr & Cur. Stat.—2d ed.—p. 2605). Mrs. Hancock held under the possession of Elder and Meeker by purchase before the seven years expired, and continued such possession, and continued to pay the taxes. This statute gives a purchaser during the running of the seven years the same rights, as the party who originally took possession and commenced the payment of taxes under claim and color of title. The rights, acquired by the original holder of the color of title, are continued to his purchaser for the balance of the seven years. There is nothing in the language of the statute to indicate, that the purchase must be manifested by a deed. A man, who sells a piece of land and receives all of the purchase money in cash, is undoubtedly obliged to give a deed at once, but if the sale is made on time, he may prefer, instead of giving a deed and taking back a mortgage for the unpaid purchase money, to give a contract for a deed, the deed to be exe-

cuted upon the full payment of all the purchase money. To hold that, under this statute, the evidence of the purchase must be the execution of a deed would be to hold, either that the purchase referred to by the statute is a purchase for all cash, or that the original holder of the color of title is bound to make a deed before he receives full payment for his property. The view, that the purchase need not necessarily be manifested by a deed, receives endorsement from the use of the word, "descent," in the statute. The language is, that all persons, holding under such possession, by purchase, devise or "descent," etc., shall be entitled to the benefit of this section. If the party, holding under claim and color of title, commences the payment of taxes, and commences his possession of the land, and then dies before the seven years are complete, his heir, who takes by descent from him, is entitled to the benefit of the statute. And yet such heir has no deed as evidence of his interest in the land. His interest has come to him merely by operation of law on account of the death of the ancestor. "Where a person dies in possession of land and the possession devolves upon and is continued by his heirs, their possession is under color of title." (1 Am. & Eng. Ency. of Law,—2d ed.—p. 850). Mrs. Hancock's possession was not adverse to the possession of her grantors, Elder and Meeker, but was in subordination thereto. Her possession was that of her vendor, and she was entitled to rely upon the claim and color of title, under which her grantor, Elder, entered into possession of the premises. "The possession of lands under an executory contract of purchase is not adverse to the vendor so long as the purchase money is not paid." (1 Am. & Eng. Ency. of Law,—2d ed.—p. 799; 28 id.—1st ed.—p. 199).

In *Cofield* v. *Furry*, 19 Ill. 183, one Parsons, in 1845, being in possession of land under claim and color of title made in good faith, mortgaged the same to one Ivans; the mortgage was foreclosed, and the land sold under

foreclosure to Skinner on July 12, 1847; Parsons made an arrangement with Skinner to pay the mortgage and have a conveyance of the land from Skinner to him; on June 20, 1849, Parsons, by arrangement of Vandruffs with Skinner that Skinner should convey to them, sold to Vandruffs, and surrendered possession to them; Skinner on January 14, 1851, executed a deed of the land to Vandruffs; Vandruffs on January 30, 1852, conveyed the land to the defendant, who took possession and held the same; the record there showed the payment of all taxes assessed on the land for the seven years before the beginning of the suit, as follows: by Parsons for 1848; by Vandruffs for 1849, 1850 and 1851; and by the defendant for 1852, 1853, 1854 and 1855; the action was commenced in 1855. It will thus be noticed, that, in that case, the Vandruffs received no deed until January 14, 1851, but paid the taxes for 1849 and 1850 under a mere arrangement for a sale of the property to them by Skinner. Under this state of facts we there said: "When the title of Parsons passed to Skinner by judicial sale, Parsons continued to hold under him, and in subservience to his title, or as purchaser, and he and Vandruffs continued so to hold until the deed from Skinner to Vandruffs was executed; and whether Skinner is treated as a trustee, holding the legal title, and they as *cestuis que trust*, or as the landlord and they his tenants, the same result follows; for, in either case, the possession and payment of taxes were under the title, as it had before existed in Parsons, and would inure to the benefit of the defendant, who succeeded them, and to the title under which the taxes were paid." It was furthermore held in this case, that the statute does not require the possession, under claim and color, to be continued in one person for the period of limitation, nor that the same person shall pay all the taxes for that period; and that "it is sufficient if the taxes for the seven years are paid under claim and color by those having or succeeding to the possession, held and continued under claim

and color." The same doctrine is also recognized in the case of *Rigor* v. *Frye*, 62 Ill. 507, where it appeared that the appellant had no deed during the first four years of his possession, but only claimed to have a bond ·for a deed from one Clark; and it was there held that the appellant did not have color of title, because the only title to the land claimed by Clark himself, under whom the appellant held, was a certificate of purchase at tax sale; and it was there said, that the appellant "did not claim any title to the land through any one who claimed to own it under a deed purporting to convey the title.    *    *    * The appellant, therefore, had no color of title    *    *    * nor did he hold any claim or color of title from any one who himself had color of title."

A contrary rule is laid down in regard to the seventh section of the Limitation act, which has reference to vacant and unoccupied land.    The language of section 6 is different from that of section 7.    Not only is there no provision in section 7, such as is above quoted, that the purchaser, devisee or heir, continuing the possession, and continuing the payment of taxes, shall have the benefit of the law, but in section 6 the words are "claim and color" of title, while in section 7 the word, "claim," is not used.    In the latter section the person, having color of title made in good faith, etc., must pay all the taxes, etc. Hence, it has been held, that, under section 7, a person, interposing the benefit of the limitation, must show that the payment of taxes and the color of title were by and in the same person.    Under section 7 payment of taxes for seven years by different persons, one of whom has only a contract for a conveyance, is insufficient.    (*Dunlap* v. *Daugherty*, 20 Ill. 398; *Dawley* v. *VanCourt*, 21 id. 460; *Bride* v. *Watt*, 23 id. 507).    This restriction, however, which is thus applied to section 7, has no application to section 6. Some confusion has arisen in some of the cases through failure to distinguish between the two sections in this respect.

For the reasons here stated, we think that the appellees have established their defense under section 6 of the Limitation act, and that the court below was correct in decreeing relief in accordance with the prayer of the cross-bill, and in dismissing the original bill for want of equity.    The decree of the circuit court is affirmed.

*Decree affirmed.*